PEOPLE *v.* MACARD.

109　623
122　424

1. CRIMINAL LAW—PERJURY—MATERIALITY OF ISSUE.

Where, in a prosecution for murder, there is no direct evidence connecting the respondent therewith in the absence of proof that a witness for the people, who has confessed that the respondent and himself committed the crime, was at a certain house on the night before the murder, the whereabouts of the witness on that night is a material issue, and perjury can be predicated upon the evidence of one who falsely testifies that the witness was not at the house in question.

2. SAME—EVIDENCE—COURT FILES.

In a prosecution for perjury alleged to have been committed upon a trial for murder, the papers returned by the examining magistrate in the murder case may be introduced in evidence for the purpose of showing the regularity of such proceedings.

3. EVIDENCE—STENOGRAPHER'S MINUTES—PROOF OF CORRECTNESS.

Testimony of a stenographer that, by the aid of his minutes,

he can give, "just as it was given in court," the testimony taken at a former trial, is sufficient proof of the correctness of such minutes.

4. PERJURY—EVIDENCE—MATERIALITY.

It is not error to permit the stenographer to read in full the testimony of one accused of perjury, as given at the trial upon which the crime is alleged to have been committed, where it all has a bearing, more or less remote, upon that portion of his testimony which is the basis of the charge.

5. SAME.

The testimony of other witnesses at the former trial may likewise be read in evidence, where its purpose is expressly limited to showing the materiality of the alleged false testimony.

6. SAME—CORRUPT INTENT.

In a prosecution for perjury alleged to have been committed on the trial of respondent's brother for murder, testimony that respondent offered money to witnesses to prevent them from testifying upon the former trial, and that he proposed to secrete them to avoid service of subpœna, is admissible to show corrupt motive and intent.

7. APPEAL—BILL OF EXCEPTIONS—UNAUTHORIZED ADDITION.

An assignment of error based upon the refusal of the court to give certain requests to charge is not available, where the requests appear to have been added to the bill of exceptions without authority, and are not certified to by the court.

Error to superior court of Grand Rapids; Burlingame, J. Submitted April 30, 1896. Decided June 30, 1896.

William Macard was convicted of perjury, and sentenced to imprisonment for 15 years in the state prison at Marquette. Affirmed.

The respondent was convicted of the crime of perjury, alleged to have been committed on the trial of his brother Charles for the murder of one Mrs. Mary McKendrick. Upon that trial the people claimed that Charles Macard and Henry Prame came from Chicago to Grand Rapids, and remained at the home of the mother of Charles until the crime was committed, on January

17th following; that Charles and Prame slept together
on January 15th and 16th. Prame subsequently con-
fessed that he and Charles Macard committed the mur-
der. Upon the trial of Charles the defense insisted that
a man by the name of Lewellen slept with Charles, at his
mother's, on the night of the 16th, and that Prame had
left on the afternoon of the 15th. The testimony, so far
as essential, will be referred to in connection with the
points raised.

The information was as follows:

" Alfred Wolcott, prosecuting attorney for the county
of Kent, aforesaid, for and in behalf of the people of the
State of Michigan, comes into said court in the March
term thereof, A. D. 1895, and gives it here to understand
and be informed: That one William Macard, late of the
township of Wyoming, in the county of Kent, aforesaid,
on, to wit, the 19th day of July, A. D. 1894, at the city
of Grand Rapids, in the county of Kent, aforesaid, at
a session of the superior court of Grand Rapids, at the
superior court room in the city hall of said city, before
the Hon. Edwin A. Burlingame, then being judge of the
superior court of Grand Rapids, aforesaid, a certain issue
before then duly joined in the said court between the
people of the State of Michigan and one Charles Macard,
then being charged in an information duly filed in said
court by the prosecuting attorney of said county with a
capital crime, to wit, the crime of murder, upon a plea of
not guilty, duly entered in said cause by order of said
court, came on to be tried in due form of law, and was
then and there being tried by a jury of the city of Grand
Rapids, in said county, in that behalf duly sworn and taken
between the parties aforesaid, upon which trial the said
William Macard, late of the township of Wyoming, in said
county, then and there appeared as a witness for and in
behalf of the said Charles Macard, and was then and
there duly sworn and took his corporal oath on, to wit,
the 19th day of July, A. D. 1894, before the said Hon.
Edwin A. Burlingame, judge of the superior court of
Grand Rapids, aforesaid, that the evidence (testimony)
which he, the said William Macard, should give to the
court there, and to the said jury so sworn as aforesaid,

touching the matter in question material to the issue then being tried between the people of the State of Michigan and the said Charles Macard, should be the truth, the whole truth, and nothing but the truth, the said oath then and there being administered in due form of law before the said Hon. Edwin A. Burlingame, judge of the superior court of Grand Rapids, aforesaid, by one Fred J. Adams, then being the clerk of the said superior court of Grand Rapids, aforesaid, he, the said Fred J. Adams, clerk of said court, aforesaid, then and there having sufficient power and authority to administer the said oath to the said William Macard in that behalf, and the said oath then and there being material to said issue then and there being tried, and then and there an oath required by law to be administered to witnesses in said court.

"That at and upon the trial of the issue so joined between the people of the State of Michigan and the said Charles Macard it then and there became and was a material question whether a certain Henry Prame passed the night of the 16th day of January, A. D. 1894, in company with the said Charles Macard, and whether any person other than Henry Prame passed the night of the 16th day of January, A. D. 1894, with and in company with Charles Macard, aforesaid. That the said William Macard, being so sworn as aforesaid, contriving and intending to prevent the due course of law and justice, and to unjustly aggrieve the people of the State of Michigan, the plaintiff in said issue, then and there, on the trial of the said issue, upon his oath aforesaid, before the said Hon. Edwin A. Burlingame, then judge of the superior court of Grand Rapids, and before the said jurors so sworn as aforesaid, falsely, corruptly, knowingly, willfully, and maliciously did depose and swear, amongst other things, in substance and to the effect following; that is to say, in answer to questions then and there put to him by counsel: 'Charles,' thereby then and there meaning the said Charles Macard, defendant in said issue, 'was there,' thereby then and there meaning at the residence of his mother, in the township of Wyoming, in the county of Kent, and State of Michigan, 'on Tuesday night,' thereby and then and there meaning Tuesday night, the 16th day of January, A. D. 1894. 'That another man who had been subpœnaed, but who was not in attendance on the court, passed the night of the 16th day of January, A. D. 1894, with the

said Charles Macard at the residence of his mother' (she be-
ing the mother of said witness and the said Charles Ma-
card), 'in the township of Wyoming, in said county.' That
a man called 'Prame,' who was known to the said Wil-
liam Macard as 'Hank,' was not seen about and did not
stay at the residence of said William Macard's mother,
in the township of Wyoming, in the county aforesaid,
any time after three, four, or five o'clock on the afternoon
of Monday, the 15th day of January, A. D. 1894. That
the man who did stay at the residence of his, William
Macard's, mother, in the township of Wyoming, afore-
said, on the night of the 16th day of January, A. D.
1894, and who passed the night of the said 16th day of
January, 1894, with and in company with said Charles
Macard, was one Loren Lewellen, as sworn and deposed
to by the said William Macard; but thereby then and
there meaning Oren Lewellen, being one, the same, and
identical person, but whose given name is Oren, and not
Loren.

"Whereas, in truth and in fact, the said Henry Prame
did pass the night of the 16th day of January, A.
D. 1894, in company with the said Charles Macard,
at the residence of his, the said William Macard's,
mother, in the township of Wyoming, in the county
aforesaid, and that another man who had been subpœnaed,
but who was not in attendance on the court aforesaid,
did not pass the night of the 16th day of January, A. D.
1894, at the residence of his, said William Macard's,
mother, in the township of Wyoming, in the county
aforesaid, with and in company with said Charles Ma-
card. That Loren Lewellen, being the said Oren Lewel-
len, only one and the same person as aforesaid, did not
stay at or pass the night of the 16th day of January, A.
D. 1894, at the residence of his, said William Macard's,
mother, in the township of Wyoming, aforesaid, in said
county, in company with said Charles Macard, and that
said Lewellen was not there at any time during the day
or night of the said 16th day of January, A. D. 1894.

"Whereby and wherein the said William Macard, on
the said 19th day of July, A. D. 1894, at the city of Grand
Rapids, in the county and State aforesaid, before the said
Hon. Edwin A. Burlingame, judge of the superior court
of Grand Rapids, at a session of said superior court of
Grand Rapids, held at the superior court room in the city
hall of said city, and at the trial of the issue aforesaid,

he, the said Hon. Edwin A. Burlingame, judge as aforesaid, then and there having power and jurisdiction to hear, try, and determine the said issue then and there being tried between the people of the State of Michigan and the said Charles Macard, and he, the said Fred J. Adams, clerk of said court, then and there having sufficient power and authority to administer the said oath as aforesaid, and said oath then and there being material to said issue, and required by law as aforesaid, by his own act and consent, and before the said jury so sworn as aforesaid, and of his own most wicked and corrupt mind, in manner and form as aforesaid, falsely, wickedly, willfully, and corruptly did commit willful and corrupt perjury; contrary to the form of the statute in such case made and provided, and against the peace and dignity of the people of the State of Michigan, and to the evil example of all others in like cases offending."

*Nathan P. Allen,* for appellant.

*Alfred Wolcott,* Prosecuting Attorney, and *Charles E. Ward,* Assistant Prosecuting Attorney, for the people.

GRANT, J. (*after stating the facts*). 1. The respondent's counsel moved to quash the information upon the ground that the testimony given by respondent was not material to the issue on the trial of Charles Macard. This contention cannot be sustained. The substance of the alleged false testimony is set out in the information, and its materiality and falsity alleged. Prame was an important witness upon the murder trial. If it had been proven that he was not at Mrs. Macard's on the night of the 16th, there would have been no direct evidence connecting Charles with the murder. The whereabouts of Prame was, therefore, a material issue in that case.

2. Counsel complains of the introduction in evidence of the papers returned by the examining magistrate in the case of *People* v. *Charles Macard.* These papers were not read in evidence, and appear to have been offered for the sole purpose of showing the regularity of the proceedings in that case. Comment is unnecessary.

3. Error is alleged in permitting the stenographer to read from his notes taken upon the murder trial, for the reason that he did not testify to their correctness. There are two answers to this contention: (1) No such objection was made when the testimony was offered; (2) the stenographer did testify that by the aid of his minutes he could "give the testimony just as it was given in court, question and answer." This was a substantial statement that his minutes were correct.

4. The stenographer was permitted to read the testimony of the respondent given upon the murder trial. The objection to it is that it contained statements not connected with the specific charge set up in the information. The objection was without merit. It all had a bearing, more or less remote, upon his testimony that Prame was not at his mother's on the night of the 16th.

5. The testimony of Henry Prame given upon the murder trial was read in evidence. This was for the purpose of showing the materiality of the testimony given by the respondent. The court, in its instruction, expressly limited the testimony taken upon that trial, outside of that of the respondent, to show the materiality of the alleged false testimony.

6. Complaint is made of the rejection of certain testimony offered on behalf of the respondent. The testimony was subsequently admitted, and therefore no error was committed.

7. Several witnesses testified that they knew this Lewellen, who, respondent claimed, slept with his brother, Charles, on the night of the 16th, and told his whereabouts at that time. The precise objection was that there was no evidence to show that the Lewellen about whom the witnesses were testifying was the same Lewellen who was claimed to have slept at Mrs. Macard's. We think there is ample evidence to justify the jury in finding that he was the same person.

8. The eighth, ninth, eleventh, and twelfth assignments of error refer to the testimony of witnesses to conversa-

tions between them and the respondent. They were offered and received for the purpose of showing the corrupt motive of the respondent. To illustrate, one of these witnesses testified that the respondent told her that he would rather give her $500 than to have her go as a witness upon the trial of his brother, and that, if she would not go before it was time for her to be subpœnaed, he would secrete her. Such testimony was competent, and was not rendered incompetent by the fact that it tended to prove that respondent was guilty of another offense. Any act or statement made by him in connection with his brother's trial was competent to throw light upon his intent and motive. *People* v. *Seaman*, 107 Mich. 348.

9. Objection was made to certain portions of the court's instructions. We find no error in the charge as a whole, and no question is raised which we deem of enough importance to be discussed.

10. Complaint was made of the refusal to give three requests on the part of respondent. These requests are not a part of the bill of exceptions. They appear to have been added without authority, and are not certified to by the court. They cannot, therefore, be discussed.

The conviction is affirmed.

MONTGOMERY, HOOKER, and MOORE, JJ., concurred. LONG, C. J., did not sit.