[Crim. No. 629. Third Appellate District.—November 9, 1922.]

THE PEOPLE, Respondent v. ARTHUR W. DUNSTAN, Appellant.

[1] CRIMINAL LAW—PERJURY—MATERIALITY OF FALSE TESTIMONY— PLEADING.—One of the essential elements of the offense of perjury, as defined by section 118 of the Penal Code, is that the alleged false testimony shall be material to the issue tendered and tried in the case; and the materiality of the alleged false testimony may be shown in a criminal pleading by setting forth the nature of the

issue, and the evidence given thereon, so that, as a matter of law, it may be said the testimony upon which the perjury is assigned was material to the issue, or by showing an action at issue in a court of competent jurisdiction, the testimony given, and its willful and felonious falsity, coupled with the averment that it was material to the issue.

[2] ID.—DEFECTIVE INDICTMENT—APPEAL—REVERSAL OF JUDGMENT.—A judgment of conviction of the crime of perjury will not be reversed on appeal because the indictment did not allege that the false testimony given by the defendant related to a "matter" material to the case or any issue therein, but stated that said testimony was in a "manner" material to the case, etc., where such indictment was otherwise sufficient, the case was tried as though the crime of perjury was charged against the defendant in a proper manner, and the evidence shows that the defendant was guilty of the crime with which it was sought by the indictment to charge him.

[3] ID.—CREDIBILITY OF WITNESS — MATERIAL ISSUE. — In a criminal prosecution, testimony affecting the credibility of the principal witness for the people, though upon a collateral question, involves a material issue in the case.

[4] ID.—TEST OF MATERIALITY.—The test of materiality is whether the statement made could have influenced the tribunal upon the question at issue before it.

APPEAL from a judgment of the Superior Court of Glenn County. H. C. Bell, Judge. Affirmed.

The facts are stated in the opinion of the court.

R. L. Clifton and W. T. Belieu for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

HART, J.—Under an indictment purporting to charge him with the crime of perjury, the defendant was convicted in the superior court of Glenn County of the crime so charged and this appeal is prosecuted by him from the judgment and the order denying his motion for a new trial. The indictment alleges that the defendant on the ninth day of January, 1922, having duly taken an oath before the superior court of the said county of Glenn that he would testify truly to the whole truth and nothing but the truth in the case then and there pending and at issue in said

court, to wit: *The People of the State of California* v. *J. H. Heusers,* did willfully, unlawfully and feloniously in a *manner* material to such case, and to the issue therein, declare and testify the truth to be that he, said Arthur W. Dunstan, "did not see one G. L. Budd in front of Tom's Pool Room or the Popular Restaurant on Tehama Street, in the town of Willows, County of Glenn, State of California, on Saturday evening, November 19th, 1921, and talk to him at said place, and further that he did not talk to said G. L. Budd, or one J. H. Heusers, the defendant in the above mentioned case, in front of said restaurant, or in front of said Tom's Pool Room on Tehama Street, in the presence of or with said J. H. Heusers at all; and that he the said defendant, Arthur W. Dunstan, did not in the company of said G. L. Budd and J. H. Heusers talk together at said place, all of which is false, the defendant well knowing such statements to be false and untrue, and all of which is contrary to the form, force and effect of the statute," etc.

The defendant demurred to the indictment on the general ground that the same "does not state facts sufficient to constitute a public offense or at all," and thus the point first made by him on this appeal is raised. The specific contention is that the indictment does not aver that the alleged false testimony given by the defendant related to a matter material to the issue involved in the case and that the indictment does not otherwise state facts which in themselves disclose that said testimony was material to the issue or to the case.

Section 118 of the Penal Code defines perjury as follows: "Every person who, having taken an oath that he will testify, declare, depose, or certify truly before any competent tribunal, officer, or person, in any of the cases in which such an oath may by law be administered, willfully and contrary to such oath, states as true any material matter which he knows to be false, is guilty of perjury."

[1] The above definition of perjury is only a restatement of the offense as it was defined by the common law; and it will be observed that one of the essential elements of the offense as it is so defined is that the alleged false testimony shall be material to the issue tendered and tried in the case. In this state it has been said that there are two modes by which the materiality of the alleged false testi-

mony may be shown in a criminal pleading: "First, by setting forth the nature of the issue, and the evidence given thereon, so that, as a matter of law, it may be said the testimony upon which the perjury is assigned is material to the issue; second, by showing an action at issue in a court of competent jurisdiction, the testimony given, its willful and felonious falsity, coupled with the averment that it was material to the issue." (*People* v. *Ah Bean,* 77 Cal. 12, 15 [18 Pac. 815, 816].)

[2] The indictment here, it will be noted, does not directly state that the alleged false testimony given by the defendant in the case of *People* v. *Heusers* related to a *matter* material to the case or any issue therein, but states that said testimony was "in a *manner*" material to the case, etc. Nor do the facts set out in the indictment and which follow the averment that the defendant testified "in a manner material" to an issue in the case themselves disclose that the alleged false testimony related to a material matter therein, although the facts so alleged set forth the controversy in respect to which the offense is alleged to have been committed, to wit: the case of *People* v. *Heusers.* (Sec. 966, Pen. Code; *People* v. *Ah Bean, supra.*) The section just named reads as follows: "In an indictment or information for perjury, or subornation of perjury, it is sufficient to set forth the substance of the controversy or matter in respect to which the offense was committed, and in what court and before whom the oath alleged to be false was taken, and that the court, or the person before whom it was taken, had authority to administer it, with proper allegations of the falsity of the matter on which the perjury is assigned; but the indictment or information need not set forth the pleadings, record, or proceedings with which the oath is connected, nor the commission or authority of the court or person before whom the perjury was committed."

It is very clear that the indictment here contains all that the above section requires to be set forth in a criminal pleading charging the crime of perjury, although we would not say that that section is not to be considered in connection with section 118, defining the crime of perjury, and thus its meaning intended to be that, in addition to the facts which it provides shall be stated, it must also be shown that the matter as to which the testimony is given is mate-

59 Cal. App.—37

rial to the issue in the case or proceeding in which the perjury is alleged to have been committed. But we are of the opinion that the circumstances of the case as tried are such as to justify us in holding that the indictment was sufficient or at least that the defendant cannot complain of the defective statement of the crime thus attempted to be charged against him. It is quite obvious that the use of the word "manner" was a clerical mistake and inadvertently inserted in the indictment in place of the word "matter" by the party who prepared that pleading. And while it does not precisely express in the indictment the fact which the word "matter" would express when used in the connection in which it (the word "manner") is used in said pleading, it must be admitted, upon a fair consideration of the indictment, that it does not go far afield in charging the crime of perjury. Indeed, while we do not regard a criminal pleading in such a case wherein the word "manner" is used in the place of the word "matter" strictly proper, nor sanction the carelessness in the preparation of criminal pleadings resulting in such a defective statement of a public offense as appears in this case, still we are unable to perceive why the word "manner" does not in a measure express the fact thus sought to be stated with sufficient clearness or intelligibleness to apprise the accused of the nature of the charge which he will be required to meet or defend against. The word "manner" is defined in part as "mode of action; way of performing or effecting anything." Thus if it be said that a party gives false testimony in a *manner* material to the issue of a case, such language may reasonably be understood or construed to mean that the way in which such party testified rendered his testimony material to the issue or issues to be decided. But, aside from this reasoning, or independently of a consideration of the strict lexicology of the word "manner," it is clear from the whole record that the defendant in this case was not misled or under any misapprehension as to the nature of the charge which the indictment makes a reasonably fair attempt to state. While it is stated in the brief of the defendant that, in the argument on the demurrer the deficiency of the indictment in the particular here considered was pointed out to the trial court by counsel, still the trial of the case plainly discloses that the defendant labored under no mis-

take as to the meaning of the indictment; for at no stage of the case was there a single objection by him to the testimony offered by the people in support of the charge of perjury upon the ground that the indictment failed in the statement of a public offense or said crime. Indeed, the case was tried as though the crime of perjury was charged against him in a proper manner or according to legal requirements in such a case. The defendant had the benefit of every right which under the law should be accorded a person accused of and on trial for a public offense as fully and effectually as if the crime had been stated according to legal formalities in such a case. (See *People* v. *Tomsky,* 20 Cal. App. 672, 685 [130 Pac. 184].) At any rate, we are of the opinion that the error predicated upon the defectiveness of the indictment, being purely technical, could not have resulted in a miscarriage of justice, since, upon a full view of the evidence, we are convinced that the defendant was clearly shown to be guilty of the crime with which it is sought by the indictment to charge him. (Const., art. VI, sec. 4½.) As our supreme court declared in *People* v. *Hitchcock,* 104 Cal. 482, 484 [38 Pac. 198], so we here declare: "We do not intend to encourage carelessness in criminal pleading, but where a defect in an indictment or information is merely technical and does not affect the substantial rights of the parties, we are not at liberty to reverse the judgment," citing section 1258 of the Penal Code. It is well here to note that the error to which the supreme court in that case was referring was precisely the same error to which we are presently giving attention, to wit, the use of the word "manner" in the place of the word "matter" in an indictment charging the crime of perjury, and used in precisely the same connection in which the word "manner" is used in the indictment involved herein.

In the case of *Smith* v. *Territory,* 14 Okl. 164 [77 Pac. 187], the defendant was prosecuted for murder and convicted of the crime of manslaughter. On appeal he assailed the indictment on the ground that the facts stated were insufficient to state the crime of murder under the statute of Oklahoma in this, that the indictment alleged that the homicide was perpetrated "with the premeditated design to *affect*" the death of the deceased, while the language of the statute defining the crime of murder was that the homicide

should have been committed "with the premeditated design to *effect*" the death of the person alleged to have been killed. In the trial court there was neither a motion made by the defendant to quash the indictment nor a demurrer interposed thereto upon the ground that it failed to state the offense thereby sought to be charged, but the defendant, upon the people offering their first witness objected to the introduction of any testimony for the reason that the indictment did not state facts sufficient to constitute a public offense. The supreme court held that the mistake was that of the pleader and a mere clerical error which could not have prejudiced the substantial rights of the defendant upon the merits.

[3] The defendant, however, makes the further point that the alleged false testimony given by him in the case of *People* v. *Heusers* was not material to any issue arising in said case. In the case of *People* v. *Heusers* the defendant was charged with, tried for and convicted in the superior court of the county of Glenn of the crime of violating the so-called Wylie Liquor Law. It appears that one G. L. Budd, an officer or detective acting for the State Law and Enforcement League, among the purposes of which was the business of enforcing the laws and ordinances prohibiting the traffic in intoxicating liquors within the limits of cities, towns and counties of the state, went to the town of Willows to investigate conditions with respect to "bootlegging" in that community; that he received information which gave him good reason to know or believe that one J. H. Heusers was engaged in the illicit liquor traffic in said town.

At the trial of said Heusers, and also at the trial of the present case, Budd testified that he met the defendant Dunstan and asked him if he knew where he could procure some liquor; that Dunstan replied that he could get liquor from Heusers and thereupon either volunteered or agreed upon the solicitation of Budd to introduce the latter to Heusers and to assure him (Heusers) that Budd "was all right." Budd testified at said trial of Heusers that he met Heusers in the early part of the evening of the 19th of November, 1921, in the Popular Cafe; that he was introduced to him by the defendant Dunstan; that they had some conversation inside the restaurant but within a few minutes after they started the conversation the three (Heusers, Dunstan and

Budd) stepped out on the sidewalk, stood in front of Tom's
Pool Room, which is next door to the Popular Cafe, and
resumed their conversation about the proposed purchase of
liquor from Heusers by Budd. These negotiations, so Budd
testified both in the Heusers and in the present case, oc-
curred in the presence and the hearing of the defendant
Dunstan, and the result thereof was that Budd purchased
from Heusers a quart bottle of "jackass," for which he paid
Heusers the sum of five dollars.

J. H. Heusers, the defendant in the case of *People* v.
*Heusers,* testifying in his own behalf in said case, stated
that he did not know said witness Budd; that he never sold
Budd any liquor on the nineteenth day of November, 1921,
or at any other time; that, although he had seen Budd in
the Popular Cafe, he never had talked to him either in
said cafe or on the sidewalk outside and in front of the
restaurant on Saturday evening, November 19, 1921.

The defendant, Dunstan, supporting the foregoing testi-
mony of Heusers, testified in said case of *People* v. *Heusers,*
and in response to the cross-examination to which he was
subjected by the district attorney in part as follows: "Q.
Did you see Mr. Budd down in front of the Pool Room
or the restaurant (referring to Tom's Pool Room and the
Popular Restaurant) that night (November 19, 1921), and
talked to him at all? A. I did not. Q. Did you talk to
him that night in front of the Pool Room or in front of
the restaurant in that block on Tehama Street in the pres-
ence of Mr. Heusers at all? A. I did not. Q. Did all three
of you talk together there? A. We did not."

In the present case the witnesses Frank Mursa and Newt
Power, the latter sheriff of Glenn County, each testified
that on the evening of the 19th of November, 1921, between
6 and 7 o'clock, he saw Budd, the defendant Dunstan
and Heusers standing together and in conversation on the
sidewalk in front of and near Tom's Pool Room on Te-
hama Street in the town of Willows. Mursa stated that he
was about sixty feet from where the trio were standing and
he observed from the movement of their lips that they
were carrying on a conversation. Power testified that he
stood thirty or thirty-five feet from where the three men
were standing and that, while he was unable to hear what

they were saying, he did observe from the movement of their lips that they were engaged in conversation.

Upon the testimony given by the defendant in the case of the *People* v. *Heusers,* as presented above, the indictment was predicated and, as to said testimony, the counsel for the defendant in his brief says: "The matter of Budd having talked to or seen appellant in front of the restaurant on this particular night was a mere incident occurring during the progress of the trial of J. H. Heusers, and had no bearing one way or the other upon the issue as to the guilt or innocence of the defendant, J. H. Heusers." In other words, the contention is that Dunstan's testimony as given in the Heusers case and as hereinabove set forth was wholly collateral to any issue raised in the case and not material thereto, and that, therefore, the evidence is wholly insufficient to support the verdict.

It may be conceded that the testimony was upon a collateral question in the case, but it does not follow that the question to which it related did not involve a material issue within the meaning of the law. Budd had testified to the circumstances leading to the commission of the crime charged against Heusers and among these was the circumstance that the defendant Dunstan introduced him (Budd) to Heusers and was present and engaged in a conversation held in front of the pool room referred to on the evening of the 19th of November, 1921, between him (Budd), Dunstan and Heusers and which conversation led to the consummation of the crime with which Heusers was subsequently charged and upon which he was later tried and convicted. It will, therefore, readily be perceived that the testimony of Dunstan denying that he was present with Budd and Heusers at the time and place mentioned involved a direct attack upon the credibility of the whole testimony of Budd in the Heusers case, and also involved the credibility of his own testimony. And, of course, it related to a matter most material to the case. If the jury had believed Dunstan, they could have justly repudiated the entire testimony of Budd and have returned a verdict of not guilty in the Heusers case, since it was principally upon Budd's testimony that the verdict in said case was founded.

In the case of the *People* v. *Barry*, 63 Cal. 62, the defendant, who was a witness in a murder case, testified upon

cross-examination that he did not state in a conversation held at a particular time and place and in the presence of certain named persons that upon the occasion of the shooting of the deceased he, said Barry, saw the defendant fire the first shot. Claiming said testimony to be false, the people proceeded against Barry for the crime of perjury and he was convicted upon a trial. It was contended upon appeal that his testimony was not material to any issue in the case in which he gave the alleged false testimony. The supreme court stated: "For the purpose of impeaching the witness, it was certainly competent for the prosecution to prove that the defendant had, on an occasion prior to the trial, made the statement imputed to him, and before this could be done it was required of the prosecution to lay a foundation for such impeachment. This could only be done by calling the attention of the witness to the contradictory statement and interrogating him respecting it. It, therefore, became a matter material to the credibility of the witness; it was a circumstance material to the issue or point of inquiry and a false oath respecting it was perjury." Again, the court in that case quoted approvingly the following language from the case of *Wood* v. *People etc.*, 59 N. Y. 123: "It is not necessary that the false statements should tend directly to prove the issue in order to sustain an indictment. If the matter falsely sworn to is circumstantially material or tends to support and give credit to the witness in respect to the main facts, it is perjury." The court adds: "And it is equally perjury if the false evidence tends to discredit the witness. To the same effect is the rule laid down by the supreme court of Massachusetts in the case of *Commonwealth* v. *Thompson*, 12 Mass. 225."

In *Rex* v. *Giepe*, 1 Ld. Raym. 256, it was said: "It is not necessary that it should appear in an information for perjury to what degree the point in which the man is perjured was material to the issue, for if it is but circumstantially material, it will be perjury. . . . So if a witness swears to the credit of another witness, if it be false it will be perjury if it conduced to the proof of the point in issue." And we may subjoin to the latter statement the suggestion that, conversely, if the witness swears to the discredit of another witness and it be false, it will be perjury

"if it conduce to the proof (or to the disproof) of the point in issue."

In 22 Am. & Eng. Ency. of Law, 687, the rule is thus stated: "The matter sworn to need not be directly and immediately material. It is sufficient if it be so connected with the fact directly in issue as to have a legitimate tendency to prove or disprove such fact by giving weight or probability to the testimony of a witness testifying thereto, or otherwise." (See, also, *People* v. *Senegram,* 27 Cal. App. 301, 303 [149 Pac. 786]; *People* v. *Metzler,* 21 Cal. App. 82 [130 Pac. 1192].)

[4] In fine, the test of materiality is whether the statement made could have influenced the tribunal upon the question at issue before it. Any statements made in a judicial proceeding for the purpose of affecting the decision, and upon which the judge acted, are material. In other words, evidence affecting the credibility of a witness usually tends to strengthen the case of a party to an action or to weaken the defense of his adversary and, therefore, such evidence is material. (*People* v. *Brilliant,* 58 Cal. 214; *People* v. *Von Tiedeman,* 120 Cal. 128 [52 Pac. 155]; *People* v. *Prather,* 134 Cal. 436 [66 Pac. 589, 863]; *People* v. *Macard,* 109 Mich. 623 [67 N. W. 968].)

There can be no doubt that, for the reason already stated, the alleged false testimony in this case tended to weaken the case of the people in the prosecution of Heusers and, consequently, under the rule as enunciated in the above cases, it was material to a vital issue in the case.

No other points are discussed in the briefs.

The judgment and the order are affirmed.

Burnett, J., and Finch, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 8, 1923.

All the justices concurred.