[Crim. No. 15584. Second Dist., Div. Five. May 26, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
MILDRED JUNE GAMBLE et al., Defendants and Appellants.

COUNSEL

Louis J. Renga and John Hay for Defendants and Appellants.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Ivan Hoffman and William V. Ballough, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**STEPHENS, J.**—This appeal follows defendants' convictions and sentences on perjury charges.

The crux of the charge against both defendants is that, to facilitate the defense of one Lena Toler in a criminal action, a "ringer"[1] was employed to create the reasonable doubt necessary for acquittal. The defense was successful, and the problem before us is whether or not defendant Mildred Gamble was a "ringer" and, as such, testified in the Toler trial. As to defendant Sims, if it is established that defendant Mildred Gamble was a false witness, the charge suggests that Sims connived and joined in the production of false evidence, and corroborated in his testimony material statements, knowing them to be false.

Toler was charged with theft of wigs from a wig shop on February 16, 1967. Prosecution witnesses identified Toler as the thief. They also testified that Toler was operating a Pontiac automobile which belonged to Sims at the time, and was in the company of one Eleanor Noble.

Sims testified that he had loaned his Pontiac to a Joyce Miller; that Joyce Miller was staying at his residence on February 16; that Eleanor Noble was in the company of Joyce Miller; and that he did not loan his car to Toler. Sims denied knowing a Mildred June Gamble. He gave the residence of Joyce Miller as 1944½ Twenty-Third Avenue, Oakland, and her occupation as that of a nurse.

At the Toler trial on May 10, 1967, one Joyce Miller testified that she was in Santa Barbara on February 16; that she borrowed the Sims' car; that she was in the company of Eleanor Noble; that she was in Santa Barbara all of the week including February 16th, on her vacation, which began February 13. She denied staying at the Sims' residence; gave her residence address as 1944½ Twenty-Third Avenue, Oakland; and stated she was a nurse, working in an Oakland hospital under the name of Joyce Miller. She stated that she did not drive (except on the date in question); that she did not have a driver's license; and that she was "in Oakland from February 19 until the day before [May 8, 1967]." She gave her maiden name as "Whiteside," and denied having ever been to the Santa Barbara police station, or speaking to any police officers in Santa Barbara. She testified that her name was "Joyce Miller"; that she had no sisters; and that her husband was dead.

---

[1] "Ringer . . . one that enters a competition under false representations, especially as to identity or past performance; . . . one that strongly resembles another." (Webster's New Internat. Dict. (3d ed. 1961).)

"Joyce Miller" of the Toler trial is the same person as defendant Mildred Gamble. Her mother testified that Mildred Gamble was in Santa Barbara on May 8 or 9, 1967; that Mildred Gamble was then married to Billy Gamble, and they stayed overnight at her house on either May 8 or 9, 1967; that "Whiteside" was not the maiden name, but a prior married name (which was corroborated by birth, marriage, and annulment certificate exhibits); that, so far as she knew, Mildred Gamble had never used the name "Joyce Miller." The court reporter at the Toler trial identified Mildred Gamble as the same person who testified under the name of "Joyce Miller" at that trial. One of the Santa Barbara police officers identified Mildred Gamble as the witness "Joyce Miller," and he also stated that she had been in the Santa Barbara police station on April 15 (a date between February 19 and May 10), and had receipted for property belonging to defendant Toler. An expert witness testified that the signature on the receipt was made by the same person (Mildred Gamble) who signed the time and work records as a nurse ("M. Gamble" and "June Gamble") at Kaiser Hospital in Oakland. The assistant to the director of clinical nurses at Kaiser testified that the hospital records were those of defendant Mildred Gamble; that she knew the person Mildred June Gamble; and she identified defendant Mildred Gamble as that person and as the nurse at Kaiser. The hospital records and time card showed defendant Mildred Gamble was working at her place of employment from February 13 through 17, 1967. The time card, upon which the amount of pay is based, is made out and signed by the employee. The time card for Mildred June Gamble for February 16 through 25 showed work every one of those days, and was signed by defendant Mildred Gamble. The hospital records show Mildred June Gamble to have been on leave of absence (vacation), from May 7 through 20, 1967.

Both defendants urge insufficiency of the evidence.

I

An essential element of the offense of perjury is the false statement, here under oath, of some material matter. (Pen. Code, § 118.) It is the statement's tendency to influence the trial which is of importance, regardless of whether it did in fact have an influential result. (Pen. Code, § 123; *People* v. *Darcy,* 59 Cal.App.2d 342 [139 P.2d 118].) Testimony which directly concerns an issue in the case is, of course, material testimony, but other statements not directly related to an issue may also be material where they have a tendency to influence the trier of fact on an issue.     False testimony even unrelated to an issue but which has the tendency to impeach the credibility of a witness who testified on a material issue may be perjurious. (*People* v. *Barry,* 63 Cal. 62, 64; *People* v. *Dunstan,* 59 Cal.App. 574, 583 [211 P. 813].)     Proof of the falsity of the testimony must be established by two witnesses, or by one witness and the corroborating

circumstances. (Pen. Code, § 1103a.)[2] The quality and quantum of proof requirement is satisfied if there exists direct evidence of the fact of falsity and corroborative circumstantial evidence tending to show guilt, independent of the direct evidence. (*People* v. *Di Giacomo,* 193 Cal.App.2d 688, 693 [14 Cal.Rptr. 574].) The evidence here established meets the requirements of falsity, materiality, quantity, and quality necessary to affirm the conviction.

■ As to Sims, he falsely testified that he loaned his car to "Joyce Miller" on February 16, 1967. The direct evidence of this fact was established by the testimony of witness Cain, the wig store employee, and the testimony of Eleanor Noble. In each instance, the testimony constituted testimony given by Sims, Cain and Noble at the prior (Toler) trial, and the transcript was read into evidence at the perjury trial.[3] Cain's testimony was that it was Toler, not defendant Mildred Gamble, who stole the wigs, was observed in the company of Eleanor Noble, and had possession of the Sims' vehicle at the time in question. He was somewhat uncertain as to the identity of the person who accompanied Toler, but was certain of Toler's identity. Any uncertainty as to the person who was with the thief was dissipated by Eleanor Noble's testimony, plus the testimony of Fred Sims. Noble's testimony was that the Sims' car was loaned to Joyce Miller in the presence of Noble—not to Toler—and that Noble and Miller were together throughout the time in question and were the persons who actually entered the wig store. The trier of fact at the perjury trial could believe that Noble and the person whom she accompanied were together from the time of the loaning of the car until its return to Sims, yet disbelieve Noble as to the identity of that person. Thus, direct testimony as to the fact that it was not "Joyce Miller" to whom the Sims' car was loaned is established by the combined testimony of Cain and Noble. The testimony of Noble established that the person who borrowed the car was in the company of Noble throughout the afternoon of February 16. The fact that the person was not "Joyce Miller" was established by the direct testimony of Cain, through his identification of Toler and his testimony that he was of the opinion that the person with

---

[2]Effective November 10, 1969, Penal Code section 1103a is as follows: "No person shall be convicted of perjury where proof of falsity rests solely upon contradiction by testimony of a single person other than the defendant. Proof of falsity may be established by direct or indirect evidence." It is apparent that this amendment lightens the prosecution's burden.

[3]The testimony of other persons who testified at the Toler trial was also read into evidence from the prior transcript. The contention that the admission of this evidence violated defendants' rights to confrontation under the Sixth Amendment of the United States Constitution is raised by defendant Mildred Gamble, and not by defendant Sims. The issue is determined adversely to defendant Mildred Gamble, and that analysis would be equally applicable as to defendant Sims. The problem is dealt with subsequently in this opinion within that portion specifically treating with defendant Mildred Gamble.

Toler was Noble, though as to this he was not sure. The fact that Mildred Gamble is the same person as the "Joyce Miller" who testified in the Toler trial is established by the direct testimony of Mr. Gregory (court reporter), Sergeant Lowry (police officer), and Mr. Mills (police officer). The corroboration of this direct testimony that it was not Joyce Miller, also known as Mildred Gamble, who was with Noble on February 16 is established by the evidence contained in the hospital records showing that defendant Mildred Gamble was in Oakland and at work at the time in question.

■ There are other allegedly perjurious statements made by defendant Sims during his testimony in the Toler case, but they need not be analyzed since it is the settled rule that though there is more than one assignment of perjury contained in the indictment, if the evidence sustains one or more of the assignments, it is not necessary to prove them all. (*People* v. *Gray*, 52 Cal.App.2d 620, 655 [127 P.2d 72]; see CALJIC Instructions, (3d ed.) No. 7.25.)

■ As to Mildred Gamble, it is sufficient proof of perjury that she falsely testified that her name was Joyce Miller; that her husband was dead; that she had no sister; that she had never been in the Santa Barbara police station; and that she had no driver's license. Each of these false statements was shown to be false, with the requisite quantity and quality of proof. The main issue of whether or not she was the person who borrowed the Sims' vehicle has been adequately discussed as that issue related to defendant Sims. Mildred Gamble's testimony in the Toler trial relative to her borrowing of the Sims' car was proved false, and the evidence supports her conviction on the assignment of this statement, as well as the others.

■ Particular mention of the last referred to assignment of perjury is necessitated because of the contention that it is the testimony of Cain and Noble which is relied upon to establish the *direct* proof of the falsity of the fact. As before noted, the Cain testimony consisted of a portion of the testimony contained in the transcript of the Toler trial, out of which the instant charges flow. At the time the prosecution offered the transcript of the testimony in evidence, the following colloquy took place:

"THE COURT: Are you offering the transcript in evidence, Mr. Quall [Deputy District Attorney].

"MR. QUALL: I am, your Honor, at this time.

"MR. GHITTERMAN [Defense attorney for a defendant not here involved]: I would object to its materiality or relevancy, your Honor.

"MR. HAY [Defense attorney for defendant Fred Sims]: No objection.

"THE COURT: Overruled on that ground.

"Mr. Perry [Defense attorney for defendant Mildred Gamble]?

"MR. PERRY: I would only join in the objection stated by Mr. Ghitterman. Otherwise I have no other objection to make.

"THE COURT: Overruled."

Thereafter, the testimony of Cain, as recorded in the transcript of the Toler trial, was read into the evidence at the perjury trial. The only objection to the reading of testimony of witnesses who had appeared at the Toler trial was on the grounds of irrelevancy and immateriality, except that of a Dr. Brace. At the time defense counsel sought to have Dr. Brace's testimony as given in the Toler trial read into evidence at the perjury trial, the prosecution objected on the ground of hearsay, and this objection was sustained. Subsequently, the defense successfully established that Dr. Brace was unavailable; the prosecution withdrew its objection; and the testimony was read into evidence. It is thus clear that the court recognized the right of a party to the cause to be confronted by the witnesses against him.

The defendants waived the right to be confronted by the witnesses by failure to properly object. This case was tried in March of 1968, after the effective date of the California Evidence Code (January 1, 1967) and the decision in *Pointer* v. *Texas* (1965) 380 U.S. 400 [13 L.Ed.2d 923, 85 S.Ct. 1065]. A proper objection on either statutory (hearsay) or constitutional (right to confrontation) grounds would have been sufficient to require the production of the proffered witnesses if their testimony was being offered to prove the truth of the contents thereof. ■ It is the usual rule that where evidence is not objected to in the trial court, the defendant may not complain of it on appeal. (*People* v. *Robinson* (1965) 62 Cal.2d 889, 894 [44 Cal.Rptr. 762, 402 P.2d 834].) ■ The failure to raise the constitutional right to confrontation of witnesses after a time when such right has become well recognized may be treated as a waiver. (*People* v. *Woods,* 265 Cal.App.2d 712, 716-717 [71 Cal.Rptr. 583].) (See, for the rule that even a constitutional right generally must be raised at the trial level to preserve the issue on appeal, *People* v. *Mabry* (1969) 71 Cal.2d 430, 441-442 [78 Cal.Rptr. 655, 455 P.2d 759] (claimed violation of Fourth Amendment); *People* v. *Tolbert* (1969) 70 Cal.2d 790, 804 [76 Cal.Rptr. 445, 452 P.2d 661] (search warrant failing to comply with Fourth Amendment); *In re Dennis M.* (1969) 70 Cal.2d 444, 462 [75 Cal. Rptr. 1, 450 P.2d 296]; *People* v. *Fain* (1969) 70 Cal.2d 588, 601, fn. 7 [75 Cal.Rptr. 633, 451 P.2d 65] (*Miranda* rights); and *People* v. *Foster* (1967) 67 Cal.2d 604, 606 [63 Cal.Rptr. 288, 432 P.2d 976] (right to confrontation of witness).)

As to the evidence adduced at the prior trial being relevant and material to the issue presented by the perjury charges, there can be no question. (*People* v. *Lem You*, 97 Cal. 224, 226-227 [32 P. 11].)[4]

The contention of defendant Mildred Gamble that "[t]he evidence received over the objection of appellant was oppressively cumulative so as to have the effect of being prejudicial" is patently without merit, and warrants no discussion here.

■ The final contention of defendant Mildred Gamble is that the court

---

[4]"For the purpose of showing the materiality of the alleged false testimony of appellant, the prosecution offered evidence of the testimony which two witnesses named Rohn and Bevan gave at the said trial of said Wong Ark. (There were two or three trials of the said Ark, but the alleged false testimony occurred at the first of said trials.) To this evidence appellant objected, as incompetent, irrelevant, and immaterial, because appellant, not being present when said testimony was given, had no opportunity to examine or cross-examine said witnesses, because said Rohn was living within the jurisdiction, and should have been called himself and because Bevan having since died, there is no rule by which his former testimony can be introduced in this cause. The court overruled the objections, and appellant excepted.

"The ruling of the court was right. The purpose was, not to produce said testimony anew, as tending to prove the facts stated therein: it was offered merely for the purpose of showing as a fact that such testimony had been given, and it was expressly limited by the court to that purpose. The materiality of alleged false testimony does not always appear upon its face, or when simply compared with the indictment; it may be material on account of certain other testimony which had been previously introduced on the trial of a cause. The testimony of a witness may be material when contradicting a part of the testimony given by another witness which is material, or if going to the credit or discredit of other witnesses, etc. For instance, if, on the trial of A for a felony, B should testify that C was at a certain place at a certain time, this would not appear upon its face to be material; but if C had previously testified that he was at another and remote place at said time, and had seen A commit the criminal offense charged, then it clearly would be material. And so the previous evidence, and the state of the cause in the action in which the alleged false testimony was given, may be proven, in order to show the materiality of the latter (2 Russell on Crimes, 662; 3 Greenl. Ev., sec. 197); otherwise the materiality of alleged false evidence could rarely be shown. The rule contended for by appellant, that a defendant must be confronted with his witnesses, etc., does not apply here. All that was sought to be proven here was the mere fact that certain testimony had been given, and the appellant was confronted with the witnesses who testified to that fact. If the greater part of the testimony of appellant given in the Wong Ark trial was material at all, it was so only in connection with the said testimony of said witnesses Rohn and Bevan.

"The said previous testimony of said Rohn and Bevan was read by F. H. Longley, the official stenographic reporter of the court, from his transcript of notes of the testimony, which he testified to be correct; and appellant seeks to make the point that said transcript was not admissible evidence. But we do not think that the point whether or not a certified transcript of the reporter's notes would, as an independent document, have been admissible arises in this case. Mr. Longley was sworn as a witness, and testified that he had taken such notes, and that they were correct, and he was allowed to read them, and was subject, of course, to cross-examination, and his testifying from his notes was clearly admissible, under section 2047 of the Code of Civil Procedure. None of the authorities cited by appellant are applicable to this point."

in the Toler trial should have appointed counsel to advise her with respect to her testimony. If the argument of defendant were to be held correct, it would become a trial judge's obligation to appoint counsel for every witness called to testify in a trial. The very idea disposes of the contention! In the Toler trial, the trial judge sought to protect any trespass upon the Fifth Amendment rights of the witness, and sustained objections whenever the witness suggested she did not wish to answer a question. Whether it was "the function of the trial court, not of the witness, to determine whether a question tends to incriminate"[5] or not, the judge "determined" each question even remotely believed by the witness to be "incriminating" in her favor.

The judgments are affirmed.

Kaus, P. J., and Reppy, J., concurred.

A petition for a rehearing was denied June 15, 1970, and appellants' petitions for a hearing by the Supreme Court were denied July 29, 1970. Peters, J., was of the opinion that the petitions should be granted.

---

[5](*People* v. *Lawrence,* 168 Cal.App.2d 510 [336 P.2d 189, 193] as cited by appellant Gamble.)