**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| MILTON BLADIMIR ROSALES RIVERA, | No. 12-72668 |
| *Petitioner*, | Agency No. A200-156-835 |
| v. | |
| LORETTA E. LYNCH, Attorney General, | OPINION |
| *Respondent*. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued July 9, 2015
Submitted March 10, 2016
Pasadena, California

Filed March 10, 2016

Before: William A. Fletcher, Richard A. Paez,
and Marsha S. Berzon, Circuit Judges.

Opinion by Judge Paez

## SUMMARY[*]

### Immigration

The panel granted Milton Rosales Rivera's petition for review of the Board of Immigration Appeals' denial of cancellation of removal based on its finding that his conviction for perjury under California Penal Code § 118 was a crime involving moral turpitude.

The panel held that CPC § 118 is not a categorical CIMT, and that it is divisible because it criminalizes two distinct offenses, written and oral perjury. Applying the modified categorical approach, the panel held that written perjury, Rosales Rivera's offense of conviction, is not a CIMT. The panel noted that it focused solely on CPC § 118, and did not consider the rest of the California state law perjury framework.

### COUNSEL

Nicole Henning (argued), Jones Day, Chicago, Illinois; Craig Stewart, Jones Day, San Francisco, California, for Petitioner.

Jessica Dawgert (argued), Kristofer McDonald, Trial Attorney, and Leslie McKay, Assistant Director, United States Department of Justice, Office of Immigration Litigation, Washington, D.C.; Joyce Branda, Acting Assistant

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Attorney General, United States Department of Justice, Civil Division, Washington, D.C., for Respondent.

**OPINION**

PAEZ, Circuit Judge:

At common law, a person could be convicted of perjury "when, under oath, he wilfully and corruptly [gave] false testimony on a material point in a judicial proceeding." 4 Wharton's Crim. Law § 574, Westlaw (database updated Sept. 2015); *see also In re H—*, 1 I. & N. Dec. 669, 670 (BIA 1943). Today, many states have adopted expanded definitions of perjury that include false statements made in depositions, declarations, and other non-judicial proceedings. California Penal Code section 118 is one such "general" perjury statute. *See* 2 Witkin & Epstein, Cal. Crim. Law 4th §§ 57, 60 (4th ed. 2012). California "supplement[s]" section 118 with several context-specific, or "special," perjury statutes, including Financial Code section 460 (prohibiting as perjury intentional false statements in bank reports) and Government Code section 1368 (prohibiting as perjury false statements made by a public officer while taking the oath of office). *Id.* § 60.

Within this complex framework, Milton Bladimir Rosales Rivera, a citizen of El Salvador, pled no contest to a charge under section 118.[1] Later, in removal proceedings, the

---

[1] California Penal Code section 118 has two subsections, but section 118(a) is the only subsection that describes a crime. Because the underlying conviction records refer to Rosales Rivera's conviction as one

Immigration Judge ("IJ") and the Board of Immigration Appeals ("BIA") ruled that this conviction was a crime involving moral turpitude ("CIMT") and therefore disqualified Rosales Rivera from obtaining cancellation of removal. The first issue in this proceeding is whether section 118 is categorically a CIMT. Because we determine that it is not, we proceed to consider whether section 118 is divisible. We find that section 118 criminalizes two distinct offenses: written and oral perjury. Finally, applying the modified categorical approach, we hold that Rosales Rivera's offense of conviction—written perjury—is not a CIMT. We therefore grant the petition for review and remand for further proceedings.

We note that whether section 118 is a CIMT is a different question from whether perjury, generally, is a CIMT. We recognize that historically common law perjury was considered to be a CIMT, but, as we will explain, both section 118 as a whole and the specific offense of written perjury criminalize significantly more conduct than common law perjury. Moreover, in focusing on section 118 alone, we leave the rest of California's perjury framework untouched. California's special perjury statutes, for instance, have distinct elements and therefore require an entirely separate CIMT analysis from the one we undertake here.

## I.

Rosales Rivera is a citizen of El Salvador who first came to the United States in 2001. He has a son who is a United States citizen. He admits he is present in the United States

under section 118, we refer to the statute throughout this opinion as section 118.

without having been admitted, paroled, or inspected by an Immigration Officer, the basis for removal that the Department of Homeland Security ("DHS") cited in its Notice to Appear. *See* 8 U.S.C. § 1182(a)(6)(A)(i). Rosales Rivera may be entitled to cancellation of removal under 8 U.S.C. § 1229b(b) due to his son's citizenship, but conviction of a CIMT would bar such relief. 8 U.S.C. § 1228b(b)(1)(C).

On December 14, 2011, in the County of San Bernardino Superior Court, Rosales Rivera was charged with "PERJURY—APPLICATION FOR DRIVER'S LICENSE" in violation of California Penal Code section 118. He pled no contest to the felony charge, and was sentenced to 180 days in the county jail.

DHS initiated removal proceedings against Rosales Rivera. The IJ ordered Rosales Rivera removed. In doing so, she concluded that a conviction under section 118 "is clearly a crime involving moral turpitude," and therefore Rosales Rivera was ineligible for cancellation of removal under 8 U.S.C. § 1229b(b). The BIA, citing to *In re Martinez-Recinos*, 23 I. & N. Dec. 175 (BIA 2001), affirmed the IJ's decision. In summary fashion, it reasoned that Rosales Rivera provided no arguments supporting a "realistic probability" that California "would apply its perjury statute to prosecute conduct which was not morally turpitudinous." The BIA also noted that the criminal complaint indicated that Rosales Rivera "committed his offense by providing false information to the State of California when he applied for a Driver's License," and that crimes with fraud as an element are categorically CIMTs.

Rosales Rivera timely filed a petition for review. 8 U.S.C. § 1252(b)(1). "We have no jurisdiction to review a final order removing an alien on account of a conviction for a crime involving moral turpitude. Nevertheless, we have jurisdiction to review the [BIA's] determination that [Rosales Rivera's conviction is], in fact," a CIMT. *Marmolejo-Campos v. Holder*, 558 F.3d 903, 907 (9th Cir. 2009) (en banc) (citing 8 U.S.C. § 1252(a)(2)(C)); *see also* 8 U.S.C. § 1252(a)(2)(D).

## II.

In *Marmolejo-Campos*, we established a two-step framework for evaluating whether a conviction is categorically a CIMT. 558 F.3d at 907–12. In the first step, we must identify the elements of the petitioner's statute of conviction, reviewing de novo the BIA's analysis. *Id.* at 907, 911.

The second step requires determining whether the "petitioner's offense" is a CIMT. *Id.* We employ the categorical approach, as described below, to assess whether a statute of conviction is a CIMT. *Blanco v. Mukasey*, 518 F.3d 714, 718 (9th Cir. 2008). To make this determination, we "compare the elements of the statute of conviction to the generic definition of a [CIMT to] decide whether the conviction meets that definition." *Castrijon-Garcia v. Holder*, 704 F.3d 1205, 1208 (9th Cir. 2013). We rely on our "own generalized definition of moral turpitude," which divides almost all CIMTs "into two basic types: those involving fraud and 'those involving grave acts of baseness or depravity.'" *Marmolejo-Campos*, 558 F.3d at 910 (quoting *Carty v. Ashcroft*, 395 F.3d 1081, 1083 (9th Cir. 2005)).

## III.

In determining whether the statute of conviction fits categorically within our general definition of moral turpitude, some deference to the BIA may be warranted. Ordinarily, where "the [BIA] determines that certain conduct is morally turpitudinous in a precedential decision, we apply *Chevron*[2] deference regardless of whether the order under review is the precedential decision itself or a subsequent unpublished order that relies upon it." *Id.* at 911. Otherwise, *Skidmore*[3] deference applies. *Id.* at 909. Here, as noted above, the BIA cited to a published decision, *Martinez-Recinos*, in which the BIA stated without analysis that "the respondent's aggravated felony offense" under California Penal Code section 118 was a CIMT. 23 I. & N. Dec. at 178. Nonetheless, we conclude that the BIA's decision does not warrant *Chevron* deference because *Martinez-Recinos* provided no reasoned explanation for its conclusion.

In *Chevron*, the Supreme Court contemplated an agency engaging in the process of "informed rulemaking" by "consider[ing] varying interpretations and the wisdom of its policy on a continuing basis." *Chevron*, 467 U.S. at 863–64. In the immigration law context, the Attorney General "vested the BIA with power to exercise the 'discretion and authority conferred upon the Attorney General by law' in the course of 'considering and determining cases before it.'" *I.N.S. v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999) (quoting 8 C.F.R. § 3.1(d)(1) (1998)). *Chevron* deference applies to BIA

---

[2] *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

[3] *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944).

decisions because the BIA "gives ambiguous statutory terms concrete meaning through [this] process of case-by-case adjudication." *Id.* (internal quotation marks omitted).

We have limited *Chevron* deference to precedential BIA decisions based on similar reasoning. The BIA issues precedential decisions where it "intend[s] to issue an interpretation of a statute it enforces." *Miranda Alvarado v. Gonzales*, 449 F.3d 915, 922 (9th Cir. 2006) (internal quotation marks omitted); *see also* 8 C.F.R. § 1003.1(g). There are, however, "rare instances" where we withhold deference from precedential BIA decisions, including where the BIA has "failed to provide an explanation for its action." *Marmolejo-Campos*, 558 F.3d at 916; *see also Mellouli v. Lynch*, — U.S. —, 135 S. Ct. 1980, 1989 (2015) ("Because it makes scant sense, the BIA's interpretation, we hold, is owed no deference under the doctrine described in *Chevron*[.]").

This case presents such a "rare instance." In *Martinez-Recinos*, the BIA's analysis focused on why section 118 is an aggravated felony, without any explanation of why section 118 is a CIMT. 21 I & N. Dec. at 176–78. The only sentence concerning section 118's status as a CIMT is: "We concur with the [IJ] that the respondent's [conviction under section 118] is also a crime involving moral turpitude, which renders him inadmissible . . . ." *Id*. at 178. The decision contains no discussion of the elements required for a conviction under section 118, nor any explanation of why section 118 constitutes a CIMT under the BIA's definition or our definition of moral turpitude. *See id*. Because the BIA did not support its conclusion with any statutory interpretation or reasoning, we accord no deference to *Martinez-Recinos* under *Chevron*.

Where *Chevron* deference does not apply in the CIMT context, *Skidmore* deference does. *Marmolejo-Campos*, 558 F.3d at 909. Under *Skidmore*, "the measure of deference afforded to the agency varies 'depend[ing] upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it the power to persuade, if lacking the power to control.'" *Id.* (quoting *Skidmore*, 323 U.S. at 140). Here, the BIA's decision that section 118 is a CIMT is not entitled to *Skidmore* deference because, as we explained, the BIA in *Martinez-Recinos* provided no reasoning whatsoever. *See, e.g.*, *Castrijon-Garcia*, 704 F.3d at 1211 ("declin[ing] to grant deference" under *Skidmore* where there is "no analysis at all").

## IV.

### A.

As explained above, under the categorical approach, we must first interpret the statute of conviction to identify its essential elements. *Marmolejo-Campos*, 558 F.3d at 907. California Penal Code section 118 provides:

> (a) Every person who, having taken an oath that he or she will testify, declare, depose, or certify truly before any competent tribunal, officer, or person, in any of the cases in which the oath may by law of the State of California be administered, willfully and contrary to the oath, states as true any material matter which he or she knows to be false, and every person who testifies, declares, deposes, or certifies under penalty of perjury in any of the cases in

which the testimony, declarations, depositions, or certification is permitted by law of the State of California under penalty of perjury and willfully states as true any material matter which he or she knows to be false, is guilty of perjury.

As discussed below, *infra* Part V, section 118 criminalizes both written and oral perjury. In the case of a defendant who committed oral perjury, we have articulated the elements of this offense as "a willful statement, under oath, of any material matter which the witness knows to be false." *Chein v. Shumsky*, 373 F.3d 978, 983 (9th Cir. 2004) (quoting *Cabe v. Super. Ct.*, 63 Cal. App. 4th 732 (1998)). The model jury instructions for section 118 explain that written perjury, by contrast, requires only that the false statement be in writing under penalty of perjury. *See People v. Hedgecock*, 51 Cal. 3d 395, 403–04 (Cal. 1990) (explaining that California Jury Instruction—Criminal ("CALJIC") No. 7.21 (1982) sets forth the elements of written perjury). The requirements of willfulness and materiality are common to both perjury offenses. Cal. Penal Code § 118.

The word "willful" "simply means that the witness made the allegedly perjurious statement with the consciousness that it was false; with the consciousness that he did not know that it was true and with the intent that it should be received as a statement of what was true in fact." *People v. Tolmachoff*, 58 Cal. App. 2d 815, 821 (1943); *see also People v. Hagen*, 19 Cal. 4th 652, 663–64 (1998); *People v. Viniegra*, 130 Cal. App. 3d 577, 584 (1982). That the accused was not

competent[4] to give a false statement is not a defense to a charge of perjury under section 118.  Cal. Penal Code § 122.

A statement is "material" if "the statement or testimony 'might have been used to affect the [proceeding in or for which it was made],'" or if "the statement could probably have influenced the outcome of the proceedings."[5]  *People v. Feinberg*, 51 Cal. App. 4th 1566, 1575 (1997) (quoting *People v. Kobrin*, 11 Cal. 4th 416, 420 (1995) (internal brackets in original), and *People v. Pierce*, 66 Cal. 2d 53, 61 (1967)).  For example, testimony may be material if it has a tendency to impeach the credibility of a witness who testified on a material issue, even if the testimony is unrelated to the case itself.  *See People v. Gamble*, 8 Cal. App. 3d 142, 146 (1970).  It is not a defense to perjury that "the accused did not know the materiality of the false statement made . . . . It is sufficient that it was material."  Cal. Penal Code § 123.

*People v. Darcy* illustrates the breadth of the materiality element.  59 Cal. App. 2d 342 (1943), *disapproved of on other grounds by Murgia v. Mun. Ct.*, 15 Cal. 3d 286 (1975).  There, the defendant stated under oath before a deputy registrar of voters that his name was Sam Darcy and that he

---

[4] A trial witness may be disqualified if he or she is "[i]ncapable of expressing himself or herself concerning the matter so as to be understood," or "[i]ncapable of understanding the duty of a witness to tell the truth."  Cal. Evid. Code § 701(a).

[5] California courts have recognized that this definition of materiality does not apply to all section 118 offenses.  *Hedgecock*, 51 Cal. 3d at 405 (setting forth an alternate definition of materiality in "a perjury prosecution based on the filing of a false [statements of economic interest] or [campaign disclosure statement]" because "there is no 'proceeding' the outcome of which could be influenced by the false verification").

was born in New York, even though his true name was Samuel Dardeck and he was born in the Ukraine. *Id.* at 345. Darcy argued that it was immaterial whether he made false statements about his name and place of birth, as he could have registered to vote had he used his real name and given his correct place of birth. *Id.* at 348–49. The court, however, reasoned that the false statements were material because the voting authorities were "prevented from examining the father's naturalization papers for the purpose of verifying [Darcy's] citizenship." *Id.* at 349. Indeed, one's name and birthplace may serve "as a basis for an investigation of qualifications of a person who registers," including citizenship. *Id.* In sum, even though Darcy would have been allowed to vote had he given his true name and true birthplace, his false statements under oath were material.

## B.

Having identified the elements of the statute of conviction in the first step, we move to the second step, where we use the categorical approach to determine whether section 118 is a CIMT. *Almanza-Arenas v. Lynch*, 809 F.3d 515, 521–22 (9th Cir. 2015) (en banc), *opinion amended and superseded*, (9th Cir. Feb. 29, 2016); *Mendoza v. Holder*, 623 F.3d 1299, 1302 (9th Cir. 2010); *Fernandez-Ruiz v. Gonzalez*, 468 F.3d 1159, 1163 (9th Cir. 2006) (citing *Taylor v. United States*, 495 U.S. 575 (1990)).

## 1.

Under the categorical approach, we compare "the elements of the statute of conviction to the generic definition" of moral turpitude to determine whether the "conduct proscribed" by the statute of conviction "is broader than, and

so does not categorically fall within, this generic definition." *Fernandez-Ruiz*, 468 F.3d at 1163 (internal citation and quotation marks omitted). The "issue is not whether the [petitioner's] actual conduct constitutes a crime involving moral turpitude, but rather, whether the full range of conduct encompassed by the statute constitutes a crime of moral turpitude."[6]    *Id.* (quoting *Cuevas-Gaspar v. Gonzales*, 430 F.3d 1013, 1017 (9th Cir. 2005)). In other words, "the key . . . is elements, not facts." *Descamps v. United States*, — U.S. —, 133 S. Ct. 2276, 2283 (2013).

When performing a categorical analysis, the court "must presume that the conviction 'rested upon [nothing] more than the least of th[e] acts criminalized,' and then determine whether even those acts are encompassed by the generic" definition of moral turpitude. *Moncrieffe v. Holder*, — U.S. —, 133 S. Ct. 1678, 1684 (2013) (quoting *Johnson v. United States*, 559 U.S. 133, 137 (2010)) (alterations in original). There must be "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside" the generic definition of moral turpitude. *Id.* at 1685 (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)); *see also Castrijon-Garcia*, 704 F.3d at 1212.

**2.**

Crimes of moral turpitude are generally "of two types: those involving fraud and those involving grave acts of

---

[6] Because we compare section 118 with the generic definition of moral turpitude, rather than with the federal offense of "perjury generally," 18 U.S.C. § 1621, we need not engage in a comparison of § 1621 and section 118.

baseness or depravity." *Castrijon-Garcia*, 704 F.3d at 1212. These two categories, however, are not exhaustive. Common law perjury—lying under oath during a judicial proceeding—has historically been regarded as a CIMT even though it does not fit neatly into the two-part framework described below. We conclude 1) that section 118 goes well beyond common law perjury and 2) that it categorically involves neither fraud nor grave acts of baseness or depravity.[7]

**a.**

At common law, a person committed perjury by giving false testimony under oath. *See United States v. Dunnigan*, 507 U.S. 87, 94 (1993). Historically, and before the development of the two-category CIMT approach, courts held with little debate that common law perjury is a CIMT. *See, e.g.*, *Masaichi Ono v. Carr*, 56 F.2d 772, 774 (9th Cir. 1932) ("It is not to be doubted that the commission of perjury before the immigration officials is a felony involving moral turpitude."); *U.S. ex rel. Boraca v. Schlotfeldt*, 109 F.2d 106, 108 (7th Cir. 1940) ("That perjury is a crime involving moral turpitude, there can be no question, and the crime was completed when she made the false statement under oath."); Wharton's *supra* § 574 (explaining that a person committed perjury at common law "when, under oath, he wilfully and corruptly [gave] false testimony on a material point in a judicial proceeding"). This conclusion recognizes the implicit harm in obstructing justice and the formality inherent in taking an oral oath in a judicial proceeding.

---

[7] The government does not argue that section 118 could be a CIMT on some other basis.

The conduct prohibited by section 118 extends far beyond the narrow meaning of common law perjury. Not only does section 118 reach past false testimony in the courtroom to non-case related lying, it also punishes lies where no oral oath, with its requisite solemnity, was required of the speaker. Section 118 essentially creates a self-defining crime—whenever a document must be signed under penalty of perjury, the penalty of perjury applies. Thus, section 118 does not fit within the historical understanding of perjury and cannot be deemed a CIMT on that basis. Nor, as we demonstrate below, does it qualify as a CIMT under the modern two-category approach.

**b.**

Non-fraudulent CIMTs generally involve base, vile, and depraved conduct that shocks the public conscience.[8] *Turijan v. Holder*, 744 F.3d 617, 621 (9th Cir. 2014). The "essence of moral turpitude" is "evil or malicious intent." *Gonzalez-Cervantes v. Holder*, 709 F.3d 1265, 1267 (9th Cir. 2013) (internal quotation marks omitted). Crimes with such a mens rea "offend[] the most fundamental values of society." *Robles-Urrea v. Holder*, 678 F.3d 702, 705 (9th Cir. 2012). "That an offense contravenes societal duties is not enough to make it a [CIMT]; otherwise, every crime would involve moral turpitude." *Id.* (internal quotation marks omitted). "Only truly unconscionable conduct surpasses the threshold of moral turpitude." *Id.* at 708.

Examples of non-fraud CIMTs include "sex-related offenses" that "necessarily inflict[] harm," *Gonzalez-*

---

[8] Neither the government nor Rosales Rivera addressed whether section 118 is a CIMT because it is base, vile, or depraved.

*Cervantes*, 709 F.3d at 1267, 1269 (listing several), as well as murder, rape, and incest, *Robles-Urrea*, 678 F.3d at 708. These and other non-fraudulent CIMTs "almost always involve an intent to harm someone, the actual infliction of harm upon someone, or an action that affects a protected class of victim." *Castrijon-Garcia*, 704 F.3d at 1207.

Section 118 encompasses conduct that does not qualify as base, vile, and depraved behavior. That one need not be competent to give the false statement demonstrates that not all section 118 convictions result from "evil or malicious intent." *See* Cal. Penal Code § 122; *Gonzalez-Cervantes*, 709 F.3d at 1267. Similarly, the fact that lack of knowledge as to the false statement's materiality is not a defense to conviction further demonstrates that not all conduct covered by section 118 involves intent to harm someone. *See* Cal. Penal Code § 123; *Castrijon-Garcia*, 704 F.3d at 1214. For example, a witness may not know that her testimony, which is unrelated to the case at issue, could impeach the credibility of another witness who testified on a material issue. *See Gamble*, 8 Cal. App. 3d at 146. Such a witness may be convicted under section 118, even though the false statement is not made with "evil or malicious intent." Because section 118 does not require the very "essence of moral turpitude," *Gonzalez-Cervantes*, 709 F.3d at 1267, it does not categorically qualify as a non-fraudulent CIMT.

Furthermore, section 118 does not categorically "offend[] the most fundamental values of society," *Robles-Urrea*, 678 F.3d at 705, like murder, rape, incest, and harm-inflicting sex-related offenses do. *See id.* at 708; *Gonzalez-Cervantes*, 709 F.3d at 1269. Unlike these crimes, perjury does not necessarily involve "intent to harm," "actual infliction of harm," or "an action that affects a protected class of victim."

*Castrijon-Garcia*, 704 F.3d at 1213–14. Indeed, Darcy, who gave a false birthplace and name when registering to vote and was convicted of perjury in California, intended no harm, inflicted no harm, and did not adversely affect a protected class of victims. *See Darcy*, 59 Cal. App. 2d 342.

In sum, we conclude that section 118 is not categorically a non-fraudulent CIMT.

**c.**

Although section 118 reaches beyond the narrow definition of common law perjury and is not categorically a non-fraudulent CIMT, it could categorically be a CIMT if it required an intent to defraud or sounded in fraud. "A crime involves fraudulent conduct, and thus is a crime involving moral turpitude, if intent to defraud is either 'explicit in the statutory definition' of the crime or 'implicit in the nature' of the crime." *Blanco*, 518 F.3d at 719 (quoting *Goldeshtein v. INS*, 8 F.3d 645, 658 (9th Cir. 1993)).

First, the intent to defraud is not explicit in the statutory definition of section 118, especially in light of *Blanco*. There, we held that California Penal Code section 148.9(a) (false representation of identity to a peace officer "to evade the process of the court, or to evade the proper identification of the person by the investigating officer") was not a CIMT. We explained that intent to defraud was not explicitly required because the statute "require[d] only the knowing provision of false information." 518 F.3d at 719. Conviction required "only that 'the forbidden act [wa]s done deliberately and with knowledge,' and not that the individual act[ed] with evil intent." *Id.* (quoting *Hirsch v. INS*, 308 F.2d 562, 567 (9th Cir. 1962)). Similarly, intent to defraud is not required

for conviction under section 118; it requires only that the false statements have been made "deliberately and with knowledge." *See id.*; *Tolmachoff*, 58 Cal. App. 2d at 821 (explaining that a false statement under section 118 must be made "with the consciousness that it was false" and "with the intent that it should be received as a statement of what was true in fact"); Judicial Council of California Criminal Jury Instructions[9] ("CALCRIM") 2640 (lacking any reference to an intent to defraud). Because, like section 148.9(a), section 118 does not require proof of a "specific intent to defraud," *see People v. Guasti*, 110 Cal. App. 2d 456, 467 (1952), nor of intent to "injur[e] another," *Darcy*, 59 Cal. App. 2d at 348, it does not explicitly require intent to defraud for CIMT purposes. *See Blanco*, 518 F.3d at 719; *cf. Goldeshtein*, 8 F.3d at 648 (noting that this court has rejected the argument "that evil intent exists if a conviction requires proof that a defendant did a forbidden act 'willfully'"); *Hirsch*, 308 F.2d at 567 (holding that a federal statute prohibiting false statements was not a CIMT because "the jury could convict if it found that petitioner had 'knowingly' but without evil intent, made a 'false' but not 'fraudulent' statement").

The converse proposition underscores the rule. We have held that particular statutes are CIMTs because the intent to defraud is explicit in the statutory definition. *See, e.g.*, *De Martinez v. Holder*, 770 F.3d 823, 825 (9th Cir. 2014) (holding that Arizona Revised Statutes section 13-2006(A)(1) is a CIMT because it is committed by "assuming a false identity with the intent to defraud another"); *Planes v. Holder*, 652 F.3d 991, 992–93 (9th Cir. 2011) (holding that it was reasonable for the BIA to conclude that state

---

[9] CALCRIM and CALJIC are alternative jury instruction sources in California.

convictions for "passing a bad check with intent to defraud" and "possession of 15 or more access devices with intent to defraud" were CIMTs). Section 118 contains no such language. Thus, we conclude that intent to defraud is not explicit in section 118.

Conviction under section 118 does require proof of "intent that [the false statement] should be received as a statement of what was true in fact," *Tolmachoff*, 58 Cal. App. 2d at 821, but that requirement does not amount to an "intent to defraud" in this context. That an accused's lack of knowledge as to the materiality of the false statement is not a defense to section 118, Cal. Penal Code § 123, demonstrates that section 118 punishes conduct that falls short of the "evil intent" required for a fraud offense to qualify as a CIMT. *Blanco*, 518 F.3d at 719.

The next question is whether intent to defraud is "implicit in the nature" of section 118. *Blanco*, 518 F.3d at 719. "[I]ntent to defraud is implicit in the nature of the crime when the individual makes false statements in order to procure something of value, either monetary or nonmonetary." *Id.* Because "[o]ne can act dishonestly without seeking to induce reliance," fraudulent intent only exists "when the individual employs false statements to obtain something tangible."[10] *Id.*

---

[10] As part of a string cite of cases in *Blanco* where the accused made false statements to obtain tangible items, we referenced *Zaitona v. INS*, 9 F.3d 432, 437 (6th Cir. 1993), which dealt with driver's licenses. *Blanco*, 517 F.3d at 719. The statute of conviction at issue there was Michigan Compiled Laws section 257.324(1)(e), using a false name or other false information "in an application for an operator's or chauffeur's license." *Zaitona*, 9 F.3d at 438. As we explain, such a statute is distinguishable from section 118 because it requires proof of the tangible item that the accused sought to obtain. In other words, a person could not

Fraud is thus distinguishable from "mere dishonesty[]" because fraud requires an attempt to induce another to act to his or her detriment." *Id.*

Our opinion in *Bisaillon v. Hogan* provides an example of where intent to defraud was not an explicit requirement for conviction, but this court nevertheless held that the crime was a CIMT. 257 F.2d 435 (9th Cir. 1958). There, conviction under 18 U.S.C. § 1542 required "willfully and knowingly mak[ing] any false statement in an application for passport with intent to induce and secure the issuance of a passport under the authority of the United States[.]" *Id.* at 436. We held that § 1542 is a CIMT in part because it "requires the presence of . . . intent to induce the issuance of the passports under authority of the United States." *Id.* at 438.[11] Section 118, unlike § 1542, does not implicate intent to defraud because it does not require "procur[ing] something of value." *Blanco*, 518 F.3d at 719. Section 118 is thus overbroad when compared to this category of implicit fraud-related crimes, because it does not require for conviction proof of "attempt[ing] to induce another to act to his or her detriment"

_____

be convicted of a crime under the Michigan statute without having applied for the license.

[11] The government cites a Second Circuit case, *Rodriguez v. Gonzales*, 451 F.3d 60 (2d Cir. 2006) (per curiam), which also held that § 1542 is a CIMT.

The court reasoned that § 1542 "involves deceit and an intent to impair the efficiency and lawful functioning of the government," which "alone is sufficient to categorize a crime as a CIMT." *Id.* at 64. In *Blanco*, however, we held that "[w]hen the only 'benefit' the individual obtains is to impede the enforcement of law, the crime does not involve moral turpitude." 518 F.3d at 719; *see also Latu v. Mukasey*, 547 F.3d 1070, 1074 (9th Cir. 2008) (same).

or "to obtain something tangible." *Id.* Thus, section 118 does not fall within the category of CIMTs where intent to defraud is implicit in the nature of the crime.

**3.**

There is "a realistic probability, not a theoretical possibility, that [California] would apply [section 118] to conduct that falls outside" all the established definitions of moral turpitude. *Moncrieffe*, 133 S. Ct. at 1685. Once again, the facts of *People v. Darcy* provide a compelling example. As an initial matter, Darcy's conduct would not fall within the narrow meaning of common law perjury, which, as noted above, historically has been considered a CIMT. Further, Darcy was convicted under section 118 even though he did not commit a base or vile act, or one involving explicit or implicit fraud. Providing a false name and birthplace when one is entitled to vote without the false statements does not implicate "intent to harm," "actual infliction of harm," or "an action that affects a protected class of victims." *Castrijon-Garcia*, 704 F.3d at 1214. Darcy's actions were therefore not base or vile. Further, he was not convicted of an explicitly fraudulent CIMT because section 118 does not contain an element of intent to defraud. Finally, his actions contained no implicit fraud, as he was not "attempt[ing] to induce another to act to his or her detriment" or "obtain something tangible."[12] *Blanco*, 518 F.3d at 719. Because defendants like Darcy are convicted under section 118 without these essential elements, there is a "realistic probability" that section 118 "would apply" to conduct that is not morally turpitudinous. *See Moncrieffe*, 133 S. Ct. at 1685.

---

[12] The facts only indicate that Darcy was attempting to file an affidavit of registration as an elector. *See Darcy*, 59 Cal. App. 2d at 345, 349.

**V.**

Where, as here, a statute is not categorically a CIMT, we may, in some circumstances, apply the "modified categorical approach." *Descamps*, 133 S. Ct. at 2281. "This approach is available, however, only when the state statute of conviction is 'divisible,' meaning it 'lists multiple, alternative elements, and so effectively creates several different . . . crimes.'" *Chavez-Solis v. Lynch*, 803 F.3d 1004, 1012 (9th Cir. 2015) (quoting *Rendon v. Holder*, 764 F.3d 1077, 1083 (9th Cir. 2014)); *see also Almanza-Arenas*, 809 F.3d at 523 (holding that "if the elements of the crime are alternative to each other—not the mode or means of proving an element of the crime—the statute is divisible").[13] "If the state statute is divisible, and the full range of conduct in the state statute is not included in the federal offense, we may use the modified categorical approach so long as one of the crimes included in the statute is a categorical match for the federal generic offense." *Rodriguez-Castellon v. Holder*, 733 F.3d 847, 853 (9th Cir. 2013) (citing *Descamps*, 133 S. Ct. at 2285).

**A.**

In *Almanza-Arenas*, we recently outlined the process for determining whether a statute is divisible. 809 F.3d at 522–28. First, we examine the text of the statute to determine whether it contains multiple crimes with distinct elements or alternative means for accomplishing a single crime. Second, we confirm our reading of the statute by looking to the

---

[13] The question of section 118's divisibility "requires neither factual development nor agency expertise" and is properly analyzed by this court. *Chavez-Soliz*, 803 F.3d at 1012 n.10.

conviction documents.  Finally, we consider how state courts have construed the statute of conviction.

Section 118 is divisible into two discrete offenses.**[14]**  At step one, an examination of the statutory text suggests that section 118 contains several offenses rather than alternative means for committing perjury.  First, an individual violates section 118 by making a false, *oral* statement under oath. Cal. Penal Code § 118(a) ("Every person who, having taken an oath that he or she will testify, declare, depose, or certify truly before any competent tribunal, officer, or person . . . willfully and contrary to the oath, states as true any material matter which he or she knows to be false . . . is guilty of perjury.").  Second, the statute criminalizes false, *written* statements made under "penalty of perjury."  *Id.* ("[E]very person who testifies, declares, deposes, or certifies under penalty of perjury in any of the cases in which the testimony, declarations, depositions, or certification is permitted by law of the State of California under penalty of perjury and willfully states as true any material matter which he or she knows to be false, is guilty of perjury.").  Thus, the language of section 118 defines two separate crimes of perjury.

The conviction documents in the administrative record confirm this interpretation at step two.  The documents relevant to this inquiry include the "indictment, jury instructions, plea colloquy, and plea agreement." *Descamps*, 133 S. Ct. at 2281 n.2.  This list is "merely illustrative, and 'documents of equal reliability may also be considered.'" *Coronado v. Holder*, 759 F.3d 977, 985 (9th Cir. 2014) (quoting *United States v. Snellenberger*, 548 F.3d 699, 701 (9th Cir. 2008) (en banc) (per curiam)).

---

**[14]** The parties agree that section 118 is divisible.

Here, the felony complaint used to charge Rosales Rivera demonstrates that section 118 contains two separate offenses. Count 2 of the complaint charges Rosales River with "the crime of PERJURY-APPLICATION FOR DRIVER'S LICENSE" as "a person who testified, declared, deposed, and certified under penalty of perjury . . . an application for a California Driver's License [and] did state as true a material matter which he/she knew to be false." This document makes clear that Rosales Rivera was specifically convicted of making a false representation on his driver's license application, rather than for an act of oral perjury.

Third, California courts have long recognized the division in section 118. *Hedgecock*, 51 Cal. 3d at 404 n.1 (explaining that "Penal Code section 118 prohibits both perjurious testimony under oath (the elements are set forth in CALJIC No. 7.20) and perjurious, signed declarations (covered by CALJIC No. 7.21)"). The fact that separate jury instructions exist for each of the two offenses in section 118 bolsters a finding of divisibility. *Compare* CALJIC 7.20 (2005 Revision) ("Perjury Under 'Oath'") *with* CALJIC 7.21 (2005 Revision) ("Perjury Under 'Penalty of Perjury'"). Notably, to prove written perjury, the prosecution must show that the statement was "delivered to another person . . . with the specific intent that it be uttered or published as true," an element that is not required for perjury under oath. *See Collins v. Super. Court*, 89 Cal. App. 4th 1244, 1247 (2001) (explaining that "it is the finality of the writing and its delivery . . . which constitutes an essential element of the crime of perjury. This is to be distinguished from the giving of false testimony before the judge, jury or tribunal responsible for deciding the matter at issue. Such testimony constitutes perjury when the words are spoken . . . .").

Our conclusion that section 118 is divisible finds further support in the fact that an individual cannot violate the statute's two offenses simultaneously. *See Rendon*, 764 F.3d at 1087 (describing two decisions that found statutes divisible in part because "it was impossible for the state to allege and the jury to find that the defendant violated the alternative parts of the statute simultaneously"). Rather, making a false statement under oath before a tribunal and making a written false statement under penalty of perjury are separate offenses that necessarily involve different conduct.

**B.**

Because section 118 is divisible, we apply the modified categorical approach to determine "which alternative element in a divisible statute formed the basis of the defendant's conviction." *Descamps*, 133 S. Ct. at 2293. This analysis allows the court to "effectuate the categorical analysis when a divisible statute, listing potential offense elements in the alternative, renders opaque which element played a part in the defendant's conviction." *Id.* at 2283. As we described when considering section 118's divisibility, Rosales Rivera pled no contest to a felony complaint that charged him with written perjury rather than oral perjury.

For the reasons discussed *supra* Part IV.B.2., the specific offense of written perjury is not a CIMT. First, written perjury criminalizes entirely different conduct than common law perjury, which focused on false oral testimony given under oath. Second, written perjury, like the general section 118, criminalizes conduct that is not base, vile, or depraved. Third, written perjury does not require proof of an intent to defraud; in fact, conviction is proper even if the accused had no knowledge that his false statement was material. And

fourth, written perjury does not sound implicitly in fraud because it does not require proof of intent to either induce another to act to his detriment or obtain something tangible. Thus, under the modified categorical approach, Rosales Rivera was not convicted of a CIMT.

## VI. Conclusion

We hold that California Penal Code section 118 categorically is not a crime involving moral turpitude. We also hold that section 118 is divisible into two separate offenses—written and oral perjury—and conclude that under the modified categorical approach, written perjury, which is Rosales Rivera's crime of conviction, is not a crime involving moral turpitude. We take no position on California's other, context-specific perjury statutes. Therefore, we grant Rosales Rivera's petition and remand for further proceedings consistent with this opinion.

**Petition GRANTED and REMANDED.**